IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| MELVIN HOLLIMON | § | PLAINTIFF |
|---|---|---|
| | § | |
| v. | § Civil Action No. 1:07cv1282HSO-JMR | |
| | § | |
| | § | |
| JOHN E. POTTER, | § | |
| POSTMASTER GENERAL | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [22] of Defendant John E. Potter, Postmaster General of the United States of America, to Dismiss or, in the alternative, for Summary Judgment, filed on or about April 17, 2009. Plaintiff filed a Response [30] and Defendant filed a Reply [32]. After consideration of the submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendant's Motion should be granted.

I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed his Complaint on or about December 28, 2007, asserting state law claims for breach of contract and promissory estoppel, as well as claims for violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq*. Relying upon Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), or alternatively Rule 56, Defendant seeks dismissal of Plaintiff's claims.

Plaintiff is an African-American male who worked as a window clerk at the United States Postal Service (USPS) in Long Beach, Mississippi, from November 14, 1992, until November 17, 2006, when he was terminated for excessive absenteeism and poor performance. Plaintiff asserts that his termination was in retaliation for a previous Equal Employment Opportunity (EEO) complaint that he filed against the USPS, and that it was otherwise unlawful on grounds that Plaintiff's absences were protected by the FMLA. Plaintiff avers that Defendant discriminated against him by denying him passport training, bulk mail training, box section training, and computer training, while offering it to Caucasian employees, and by otherwise requiring Plaintiff to take formal FMLA leave while Caucasian employees were not required to do so.

II. DISCUSSION

A. Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

1. *State Law Claims*

Plaintiff's breach of contract and promissory estoppel claims are grounded upon his theory that Defendant breached its policies by terminating Plaintiff for taking FMLA-protected leave. Defendant asserts that these state law claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted, as preempted by the Civil Service Reform Act (CSRA), 5 U.S.C. § 1101, *et seq.*, and Title VII.

The CSRA "provides a comprehensive framework for the judicial and

administrative review of prohibited personnel actions taken against federal employees and applicants for federal employment." *Crawford v. United States Dept. of Homeland Sec.,* 245 Fed. App'x 369, 374 (5th Cir. 2007). "Given the remedial system set forth in the CSRA, [the Fifth Circuit Court of Appeals has] held that the CSRA provides the exclusive remedy for claims against federal employers, thereby precluding any other causes of action." *Wiley v. Potter*, No. 3:06cv00679, 2008 WL 4539559, at * 2 (S.D. Miss. Oct. 7, 2007) (*quoting Crawford*, 245 Fed. App'x at 374). Further, "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees."[1] *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996).

Because Plaintiff's state law claims stem from his employment with the USPS, and are based upon personnel actions involving his termination from employment, those claims are preempted by the CSRA. *See Rollins v. Marsh*, 937 F.2d 134, 138-40 (5th Cir. 1991) ("[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions."). Insofar as Plaintiff's state law claims arise out of the same facts as his employment discrimination claims, they are also preempted by Title VII and do not afford an independent ground for relief. *See Jackson*, 99 F.3d at 716; *see also Wiley*, 2008 WL 4539559, at * 2 n.2 (dismissing plaintiff's breach of contract claim as preempted by the CSRA and Title VII). Under the circumstances present

---

[1] The CSRA permits Title VII claims against federal employers. *See Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991).

here, Plaintiff's claims for breach of contract and promissory estoppel are preempted by both the CSRA and Title VII, and are subject to dismissal pursuant to Rules 12(b)(1) and/or 12(b)(6).[2]

2.     *42 U.S.C. § 1981 Claim*

Plaintiff's Complaint asserts jurisdiction pursuant to 42 U.S.C. § 1981, however, it does not state a cause of action on this ground. It is well established that "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson*, 99 F.3d at 716. Under the law of this Circuit, § 1981 claims are barred under these facts, on grounds that Title VII precludes alternate remedies for federal employees alleging employment discrimination. *See Smith v. Harvey*, 265 Fed. App'x 197, 200 (5th Cir. 2008); *see also Rowe v. Sullivan*, 967 F.2d 186, 189-90 (5th Cir. 1992). To the extent Plaintiff asserts a § 1981 claim, it must be dismissed for lack of subject matter jurisdiction as preempted by Title VII. *See Smith v. Harvey*, 265 Fed. App'x 197, 201 (5th Cir. 2008) (affirming the district court's 12(b)(1) dismissal of the plaintiff's state law tort claims as preempted by Title VII).

---

[2]*Compare Schwartz v. Int'l. Federation of Prof. and Tech. Engineers, AFL-CIO,* 306 Fed. App'x 168, 171-72 (5th Cir. 2009) (finding that a district court has federal question jurisdiction over state law claims that are preempted by the CSRA, but the claims must nonetheless be dismissed on grounds that the administrative framework provided by the CSRA is the only proper means to pursue them), *with Crawford*, 245 Fed. App'x at 374 (affirming the district court's dismissal of plaintiff's CSRA-preempted state law claims on Rule 12(b)(1) grounds); *see also Wiley,* 2008 WL 4539559, at * 1, n.1 (acknowledging that several CSRA preemption opinions have applied either Rule 12(b)(1) or Rule 12(b)(6)).

B.    Federal Rule of Civil Procedure 12(b)(5)

Defendant seeks dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(5), for ineffective service of process. Because the Court finds that Plaintiff's claims should be dismissed on other grounds, it need not resolve this issue.

C.    Federal Rule of Civil Procedure 56

Plaintiff's remaining claims raise alleged FMLA and Title VII violations. Because both parties have submitted, and the Court has considered, evidence outside the pleadings, Plaintiff's remaining claims will be addressed pursuant to Federal Rule of Civil Procedure 56. *See* FED. R. CIV. P. 12(b)(6) ("[w]here matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth*

*v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id.* (*citing Phillips Oil Company v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Booth*, 75 F. Supp. 2d at 543. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *See Booth,* 75 F. Supp. 2d at 543.

    1.    *Family and Medical Leave Act (FMLA) Claim*

The FMLA was enacted to permit "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601.

"The FMLA has two distinct sets of provisions, which together seek to

meet the needs of families and employees and to accommodate the legitimate interests of employers." The provisions in the first set are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances. The provisions in the second set are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights.

*Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citations omitted).

Cases seeking to enforce proscriptive rights are generally brought pursuant to 29 U.S.C. § 2615(a)(2), which makes it "unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S. C. § 2615(a)(2); *see also Elsensohn,* 530 F.3d at 372. To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must demonstrate that (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took FMLA leave. *See Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757, 768 (5th Cir. 2001).

The parties dispute whether the third element of Plaintiff's *prima facie* case has been met, namely, whether a causal link exists between Plaintiff's FMLA leave and his termination. Under the law of this Circuit, temporal proximity between the FMLA-protected activity and the adverse action may, by itself, establish causation. *See Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at * 5-6 (5th Cir. June 6, 2008). Viewing the evidence in the light most favorable to the non-movant, as this Court must, the Court finds that Plaintiff has met his *prima facie*

burden sufficient to withstand summary judgment, in that his 2006 FMLA-protected leave occurred just months prior to his termination. *See Richard v. Cingular Wireless, LLC*, 233 Fed. App'x 334, 338 (5th Cir. 2007) (finding a two and half month period between the protected activity and adverse action sufficient to establish a causal link in the plaintiff's *prima facie* case).

Because Plaintiff has made a *prima facie* showing on his retaliation claim, the burden shifts to Defendant to articulate a "legitimate, nondiscriminatory reason" for Plaintiff's termination. *See Hunt*, 277 F.3d at 768. If Defendant is able to satisfy this burden, Plaintiff must show by a preponderance of the evidence that Defendant's reason is a pretext for retaliation. *See id.*

Defendant relies on Plaintiff's breach of a Last Chance Agreement (LCA) as a reason for his termination. The LCA, dated April 13, 2006, was the product of Plaintiff's appeal to the USPS of its February 17, 2006, memorandum notifying Plaintiff of his removal from the USPS for excessive absenteeism.[3] The LCA states in part that:

> I, Melvin D. Hollimon...agree to maintain a satisfactory level of

---

[3] At that time, Plaintiff had been issued five memoranda from the USPS identifying 111 unscheduled absences, as well as poor work performance. *See* 10/7/2003 Memo., attached as Ex. "2-1" to Def.'s Mot.; 12/30/2003 Memo., attached as Ex. "2-2" to Def.'s Mot.; 5/13/2004 Memo., attached as Ex. "2-3" to Def.'s Mot.; 2/25/2005 Memo., attached as Ex. "2-4" to Def.'s Mot.; 2/17/2006 Memo., attached as Ex. "2-5" to Def.'s Mot. Plaintiff had been warned numerous times that future deficiencies would result in more severe disciplinary action, such as "suspension, reduction in grade and/or pay, or removal from the Postal Service." *See id.* As a result of reoccurring absences, Plaintiff was suspended three times, one of which was reduced to a written warning. *See id.*

>
> attendance and adhere to all Postal Service regulations, rules and policies pertaining to attendance and leave request procedures. I agree and fully acknowledge that the decision as to whether or not my level of attendance is satisfactory will be at the exclusive discretion of Postal Service management.
>
> I further agree and fully acknowledge that if my level of attendance is deemed unsatisfactory by Postal Service management such a determination will constitute a breach of this LAST CHANCE AGREEMENT.
>
> I agree and fully acknowledge that if it is determined that I have breached this LAST CHANCE AGREEMENT by a determination that I have failed to maintain a satisfactory level of attendance a removal action will be issued to me.
>
> \* \* \*
>
> I, Melvin D. Hollimon...agree to maintain a satisfactory level of work performance to include (but not limited to) the ability to follow instructions and safe working practices. I agree and fully acknowledge that the decision as to whether or not my performance is satisfactory will be at the exclusive discretion of the Postmaster, Long Beach, MS.
>
> I agree and fully acknowledge that if my performance is deemed unsatisfactory as determined by the Postmaster, Long Beach, MS, such will constitute a breach of this LAST CHANCE AGREEMENT.
>
> I further agree and fully acknowledge that if [sic] is determined that I have breached this LAST CHANCE AGREEMENT by a determination that my performance has been unsatisfactory, as determined by the Postmaster, Long Beach, MS a removal action will be issued to me.

LCA, attached as Ex. "2-6" to Def.'s Mot.

By memorandum dated October 18, 2006, Plaintiff was notified of his termination from the USPS for breach of the LCA. *See* 10/18/06 Memo., attached as Ex. "2-8" to Def.'s Mot. As reasons for his termination, the memorandum identified 15 unscheduled absences in 2006, none of which occurred during Plaintiff's 2006

FMLA-protected leave,[4] and three instances of unsatisfactory work performance. *See id.* Based upon a thorough review of the evidence, Plaintiff's breach of the LCA based upon excessive absenteeism and poor performance constitutes a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff insists that "Defendant used more than 23 instances of the Plaintiff's failure to report to work as a basis for his termination when he was actually excused from duty." Pl.'s Resp. at p. 4. Plaintiff does not identify any dates of these 23 instances, instead referring to "Exhibit H" in support of his position. However, Plaintiff's "Exhibit H" references the October 18, 2006, termination letter detailing 15 unscheduled absences, none of which occurred during Plaintiff's FMLA-protected leave. To establish that Defendant's reasons were pretextual, Plaintiff must "produce evidence rebutting all of [the] defendant's proffered nondiscriminatory reasons." *McArdle v. Dell Products, L.P.*, 293 Fed. App'x 331, 340 (5th Cir. 2008) (*quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005)). Because Plaintiff has failed to do so, he has not met his summary judgment burden on this claim.

Moreover, it appears from the record that other than the 15 unscheduled absences identified in the October 18, 2006, termination memorandum, the other 111 identified unscheduled absences occurred prior to Plaintiff's entry into the LCA.

---

[4] It is undisputed that Plaintiff was approved to take FMLA leave from June 9, 2005, through December 31, 2005, and from July 26, 2006, through August 8, 2006. *See* Pl.'s Resp. at p. 4; *see also* Wallace Decl., attached as Ex. "5" to Def.'s Mot.

*See* 10/7/2003 Memo., attached as Ex. "2-1" to Def.'s Mot.; 12/30/2003 Memo., attached as Ex. "2-2" to Def.'s Mot.; 5/13/2004 Memo., attached as Ex. "2-3" to Def.'s Mot.; 2/25/2005 Memo., attached as Ex. "2-4" to Def.'s Mot.; 2/17/2006 Memo., attached as Ex. "2-5" to Def.'s Mot. It is undisputed that the LCA left the determination as to Plaintiff's satisfactory level of attendance and job performance to the sole discretion of the USPS. There is no evidence that the USPS abused this discretion when it cited Plaintiff for 15 unscheduled, non-FMLA-protected absences and three instances of poor work performance from May 2006 through October 2006. There is insufficient evidence that a reasonable jury could infer that, but-for Plaintiff's FMLA leave, he would not have been terminated.[5]

   2.   *Title VII Discrimination Claim*

Plaintiff asserts that he was discriminated against when he was denied training and required "to formally take leave pursuant to FMLA and was given a LCA to sign with the directives that he had to present a doctor's excuse for taking leave." Pl.'s Compl. ¶ 25. Plaintiff asserts that because of this discrimination, he

---

[5]Defendant also seeks dismissal of Plaintiff's FMLA claim under Rule 12(b)(1), as time-barred by the applicable statute of limitations. As the Court appreciates Defendant's argument, the theory is that dismissal is warranted on grounds that Plaintiff's Complaint does not assert a violation of the FMLA occurring within the two years prior to December 28, 2007, the date Plaintiff filed his Complaint. Though Plaintiff's Complaint is unclear as to the date of the "last event constituting the alleged violation for which the action [was] brought," 29 U.S.C. § 2617(c)(1), it appears from the record that Plaintiff was granted FMLA leave from June 9, 2005, through December 31, 2005. Because December 31, 2005, is within two years of when this action was filed, the Court will not dismiss Plaintiff's claims on this ground.

"has lost wages and benefits and has sustained other pecuniary loss," and has been further denied opportunities for career advancement. *Id.* ¶ 26.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer...to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In Title VII cases where there is no direct evidence of discrimination, courts are to apply the tripartite burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See Portis v. First Nat. Bank of New Albany, Miss.,* 34 F.3d 325, 328 (5th Cir. 1994).

"To succeed on a claim of intentional discrimination under Title VII ..., a plaintiff must first prove a *prima facie* case of discrimination." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (internal citations omitted). "If the plaintiff establishes a *prima facie* case by a preponderance of the evidence, an inference of intentional discrimination is created." *Eaves v. K-Mart Corp.*, 193 F. Supp. 2d 887, 893 (S.D. Miss. 2001). To establish a *prima facie* case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. *See Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (*citing Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001)). Once a *prima facie*

case of discrimination is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007). If the employer does so, the burden shifts back to the plaintiff to present substantial evidence that the employer's reason was a pretext for discrimination. *See id.*

In the *prima facie* discrimination case, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Under the law of this Circuit, denial of employee training does not constitute an adverse employment action covered by Title VII where it does not result in a change of employment status, benefits or responsibilities. *See Shakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999). The undisputed evidence establishes that Plaintiff's lack of training did not effect either his salary or his opportunity for promotion or advancement, or otherwise disadvantage him in his employment. *See* Pl. Depo. at pp. 67, 86, 87. Because Plaintiff has not offered sufficient evidence that he experienced a change in his employment status, benefits or responsibilities when he was required to take formal FMLA leave or present a doctor's excuse for taking leave pursuant to the LCA, Plaintiff has not met his *prima facie* burden under Title VII.[6]

---

[6]Defendant also seeks dismissal of Plaintiff's Title VII claim pursuant to Rule 12(b)(1), for failure to timely exhaust his administrative remedies. In particular

For the first time in his Response, Plaintiff asserts that his termination was racially motivated. *See* Resp. at p. 6. This claim was not raised in Plaintiff's Complaint and is therefore barred. Moreover, Plaintiff could not succeed on the merits. Assuming Plaintiff had met his *prima facie* burden, Defendant has presented legitimate, nondiscriminatory reasons for Plaintiff's termination, namely Plaintiff's breach of the LCA based upon excessive unscheduled absences and poor work performance. Plaintiff presents the Affidavit of Pattie Cropper to establish that Defendant's reasons for termination were pretextual. The Cropper Affidavit states that Caucasian clerks have been tardy and missed work, but were nevertheless trained and remained employed. *See* Cropper Aff., attached as Ex. "E" to Pl.'s Resp. "Conclusory statements are not competent evidence to defeat summary judgment." *Turner*, 476 F.3d at 345-46 (*citing Topalian v. Ehrman*, 954

---

Defendant asserts that Plaintiff "did not timely seek EEO counseling regarding his claim that he was denied training." Def.'s Mem. in Support of its Mot. at p. 28.

As a precondition to seeking judicial relief, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). In determining if a plaintiff has adequately exhausted his administrative remedies, the Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id*. (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463(5th Cir. 1970)). Because Plaintiff did complain to an EEO officer on October 26, 2006, of his lack of passport training, the Court, construing the administrative charge liberally, finds that Plaintiff did exhaust his administrative remedies on this claim. This does not change the result for Plaintiff's Title VII claim of discrimination based on training, as it must be dismissed on its merits.

F.2d 1125, 1131 (5th Cir. 1992)). Because Plaintiff has not offered specific evidence refuting Defendant's reasons for his termination, this claim must be dismissed. *See id. (citing Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994)); *see also Swanson v. General Services Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) (a generalized statement that "whites 'could leave out any time they wanted'" is insufficient summary judgment evidence).

### 3. *Title VII Retaliation Claim*

Plaintiff further alleges that his termination was in retaliation for a previous EEO complaint against the USPS based upon race and sex discrimination. Title VII retaliation claims are also subject to the *McDonnell-Douglas* burden shifting analysis. To establish a *prima facie* case of retaliation, Plaintiff "must show '1) that [he]...engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.'" *Fallon v. Potter*, 277 Fed. App'x 422, 425 (5th Cir. 2008) *(quoting Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005)).

In support of his *prima facie* showing, Plaintiff asserts that there is a "close nexus between the final judgment of the first complaint (2002) and the resumed harassment as stated in the second complaint (October 3, 2003) letter of warning." Pl.'s Resp. at p. 8. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d

-15-

1180, 1188 (5th Cir. 1997). However, it is Plaintiff's 2006 discharge, and not his October 2003 letter of warning, which constitutes the adverse action for purposes of Title VII. *See Roberson v. Game Stop/Babbage's*, 152 Fed. App'x 356, 360 (5th Cir. 2005) ("[a]n adverse employment action must be an 'ultimate employment decision' such as hiring, firing, promoting, demoting, compensating and granting leave.").

Plaintiff's Complaint avers that his first EEO complaint was filed in 1997[7], while his second one was filed in 2007. Because the second EEO complaint was filed after Plaintiff's discharge from the USPS, it cannot serve as the basis for his retaliation claim. The record does not support the conclusion that the temporal nexus between the 1997 EEO Complaint and Plaintiff's discharge is so close as to establish the requisite "causal connection" for Plaintiff's *prima facie* case. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("cases that accept mere temporal proximity...as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"); *see also Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (finding a five-month lapse, by itself, does not support an inference of a causal link).

Even if Plaintiff were able to satisfy his *prima facie* burden, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge. Plaintiff concedes that he has no information that he was terminated because of his

---

[7]Plaintiff testified in his deposition that his first EEO complaint was filed in 1993. *See* Pl.'s Dep. at p. 19, attached as Ex. "2" to Def.'s Mot.

prior EEO activity.  *See* Pl.'s Dep. at p. 183-193, attached as Ex. "2" to Def.'s Mot. At most, Plaintiff's former co-clerk and union representative, who was not involved in the decision to terminate Plaintiff, told Plaintiff that "[t]hey're not treating you fair, and you know they're just getting back at you." *See id.* at p. 188, 190-91. "Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence." *Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at * 2 (5th Cir. 2008); *see also Lind v. UNC, Inc.*, 36 F. Supp. 2d 350, 358-59 (N.D. Tex. 1999) (disregarding opinion testimony from plaintiff's co-worker on grounds that the co-worker was not involved in the decision to terminate the plaintiff and did not have any personal knowledge of the reasons underlying the employer's decision to terminate).  Based upon the foregoing, Plaintiff's Title VII retaliation claim cannot survive summary judgment.

### III.  CONCLUSION

Defendant's Motion must be granted.  Plaintiff's state law breach of contract and promissory estoppel claims are preempted by the Civil Service Reform Act, as well as by Title VII of the Civil Rights Act of 1964 .  To the extent Plaintiff asserts a violation of 42 U.S.C. § 1981, it is preempted by Title VII of the Civil Rights Act of 1964.  Plaintiff is further unable to sustain his summary judgment burden on his claims asserting violations of the Family and Medical Leave Act and Title VII of the Civil Rights Act of 1964.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons

-17-

stated more fully herein, the Motion [22] of Defendant John E. Potter, Postmaster General of the United States of America, to Dismiss or, in the alternative, for Summary Judgment, filed on or about April 17, 2009, should be and is hereby **GRANTED**, and this Civil Action is hereby dismissed, with prejudice.

**SO ORDERED AND ADJUDGED**, this the 7th day of July, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE